WILLIS
vs
BRUCE & WAR-
FIELD.

---

CHANCERY.     ## Willis, (of color,) *vs* Bruce and Warfield.

Case 138.               ERROR TO THE FAYETTE CIRCUIT.

*Master and slave.   Contracts.   Emancipation.*

September 21.     JUDGE SIMPSON delivered the opinion of the Court.

THE plaintiff in error instituted this suit in chancery
Case stated in   to establish his right to freedom.
the bill.
He asserts, that he belonged to Mrs. Margaret Bruce, who in the fall of the year, 1844, being willing to promote his emancipation, agreed for that purpose, to take for him, the comparatively small price of three hundred dollars, which was not more than half his vendible value, and thereupon to consummate that object, he procured the defendants, two colored friends who were free, to assume for him two hundred and fifty dollars of the price, and he paid himself fifty dollars, the residue thereof. That a bill of sale of him was then made by Mrs. Bruce to the defendants, with a distinct understanding by and between all the parties, that he was within a reasonable time, to refund the two hundred and fifty dollars, out of the proceeds of his labor, and was, on that condition, to be a free man. He alledges he had paid more than one half the amount, had offered and was willing to pay the balance, but that the defendants, in violation of the aforesaid agreement, and in utter disregard of his rights, had sold him back to his former owner, who designed selling him to a purchaser to be taken to a foreign State. He also relies upon a receipt purporting to be executed by his two colored

friends, as showing the agreement of the parties, and amounting, in effect, to a conditional emancipation.

Mrs. Bruce, who was made a defendant, denies positively, that she ever entertained any desire for the freedom of the complainant, or that in making the sale to her co-defendants, such purpose was contemplated by her, or understood or agreed upon between them; and states, if such an object was designed by them, it was unknown to her. She alledges that the plaintiff, whilst she owned him, had feigned sickness, when in fact, as her physicians informed her, he was not in the least unwell; that he had become idle and worthless, had rendered her no service, under the pretence of being sick, for upwards of a year; was insolent in his language and bearing towards her, and in consequence of these annoyances and the advice of her friends, she had determined to, and did make sale of him. Instead of desiring his freedom, she was opposed to it, and was induced to sell at the low price she did, on account of his worthlessness and little value; and afterwards, at the instance of her co-defendants, who represented to her, their inability to pay the price, and that they could do nothing with the plaintiff, she reluctantly rescinded the contract, surrendered the note for the price stipulated, and took him again as her property.

The other defendants state that Willis, by his representations, had induced the belief, he had the means to purchase and pay for himself. Supposing such to be the fact, they had applied to Mrs. Bruce to know what price she would take for him, who because of his pretended illness, agreed to take for him three hundred dollars. Willis was then applied to for the money, when it was ascertained, he had none, and no means of raising any. A subscription was set on foot for the purpose of obtaining his freedom, and the sum of fifty dollars raised and paid to his mistress, by one of the defendants; and after some fruitless attempts to get the balance of the price, the project was abandoned as hopeless. Some months afterward, learning that Willis was in jail, for using towards his mistress improper and insolent language, and would, in all probability, be sold

and taken out of the State, they came to the conclusion to execute to Mrs. Bruce their note for two hundred and fifty dollars, to prevent him from being separated from his wife and children, and become the purchasers of him themselves, which was done. They intended to emancipate him whenever he repayed to them by his labor, a reasonable hire, and the amount they had to pay for him, but denied they had ever made a contract with him to this effect, or that there was any understanding or agreement with him or any one else, that he was to be free, on the condition he did, within a reasonable time, refund the two hundred and fifty dollars which they were to pay for him. They further state, that Willis never paid any part of the purchase money, nor was any of it paid except the interest upon the note of two hundred and fifty dollars, during the time which they had him, and this they paid themselves. That they permitted him during the time they owned him, to procure employment wherever he could do so, he paying to them the avails of his labor, and the amount so received by them did not exceed a reasonable hire. And having learned that he threatened to run off, and was circulating reports among the colored population prejudicial to them, they solicited Mrs. Bruce to rescind the contract and take him back, as they were unable to pay for him, which, with some hesitation, she finally concluded to do, with the avowed determination to sell him, and send him to the south.

It may be assumed from the testimony and the pleadings in the cause, there was an understanding between Willis and his colored friends who purchased him from Mrs. Bruce, that they were to emancipate him when he should discharge, by the proceeds of his labor, the note executed by them for two hundred and fifty dollars, with the interest which should accrue thereon; but Mrs. Bruce was no party to this arrangement, it being exclusively an understanding between themselves, to which no other person was a party.

A promise to, or an executory agreement with a slave by his owner, that he shall be emancipated, is not obligatory, and cannot be enforced either at law or in equity.

A promise to, or
an executory
contract with a

À slave is not competent to make a valid contract. He has no ability to enter into an agreement, nor will any promise made to him by his owner, authorize him to maintain a suit against him for his freedom. He may be the recipient of his master's bounty, and receive from him his manumission. But this must take place in the mode prescribed by law, and be affected by *last will or some instrument of writing*. And as this mode for the emancipation of slaves has been prescribed by legislative enactment, in pursuance of a requisition of the constitution of this State, it has been construed as implying an interdiction of emancipation in any other manner: *Dunlap, &c.* vs *Archer*, (7 *Dana*, 31.)

If such a contract had been made with Mrs. Bruce, or any other person capable of entering into it, and had been based upon an available consideration between the parties, a Court of equity might compel its execution for the benefit of Willis: *Thomson* vs *Wilmot*, (1 *Bibb*, 422.) But if there existed no other legal obstacle to a suit by a slave against his owner, to enforce specifically, a promise to give him his freedom, it would be contrary to the policy of the law, and inconsistent with the relation of master and slave, to permit a suit to be brought by the latter against the former, for the enforcement of this or any other promise. It follows, therefore, that the present suit cannot be maintained by Willis, to enforce a compliance with the promise made to emancipate him.

The receipt already adverted to, is however relied upon, as an instrument of writing sufficient for his emancipation. It was executed by one only of the two joint purchasers, although it purports to be the act of both of them. One of them denies its execution by him, or by any authority from him; and no proof of any power to execute it in his name is adduced. The writing is as follows, viz:

"RECEIVED, LEXINGTON, KY., MARCH 31, 1845, of Willis Johnson, eighty four dollars, being in part payment of the sum of two hundred and fifty dollars, for which sum, with interest, William and Samuel Warfield, have become responsible as the purchase price of

WILLIS
*vs*
BRUCE & WARFIELD.

slave by his owner, that he shall be emancipated, is not obligatory, and cannot be enforced either at law or in equity. Slaves can be emancipated in no other way than such as is prescribed by law: *Dunlap, &c.* vs *Archer*, (7 *Dana*, 31.)

said Willis, and which sum, with all interest and expenses, he is fully to refund to us, before our claim on him can be released.                                   *Wm. Warfield*,
                                                    *S. Warfield.*"

It may be rationally deduced from the foregoing writing, that an agreement existed between the subscribers and Willis, to the effect that, when the amount specified should be refunded, their claim to him was to be released, and he was to be emancipated by them. This purpose, however, is not expressed in the writing, and the existence of such an agreement between them, arises alone by implication from the statements which it contains. It does not purport to recite an agreement between them and Willis, nor does it declare for what purpose their claim on him was to be released. It is at most, but evidence there was an agreement between them to this effect, which is alluded to, but the terms or object of which are not announced or explained.

We cannot suppose the Legislature ever intended, when providing for the emancipation of slaves by any instrument of writing, that one like the foregoing, which does not contain even an express intimation of a design to emancipate at a future period, or upon any contingency whatever, should be regarded as sufficient for the purpose, and impart to the slave a title to his freedom. It does not purport to be a writing declaring his manumission. It does not contain a contract, either executed or executory. It is only that which it purports to be, a receipt for a sum of money, containing a recital of the object to which the money is to be applied. We do not, therefore, deem it to be such an instrument of writing as the law requires for the emancipation of a slave, had it even been executed by both the owners.

If the plaintiff in error had conducted himself with propriety, and labored energetically for the accomplishment of the object designed by the defendants, who purchased him, he would no doubt have obtained his liberty. But his idle and vicious habits and refractory spirit, defeated their humane purpose, and left him without any just cause of complaint against any other per-

son, the victim and slave of his own folly and worth-lessness.

Wherefore, the decree of the Court below, dismissing his bill, is affirmed.

*Robertson* for plaintiff; *Woolley and Kinkead* for defendants.